UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

**WEBASTO THERMO &
COMFORT NORTH AMERICA, INC.**

      Plaintiff,

v.

**CHRIS CRAFT CORPORATION,**
a Florida Corporation,
**INDEPENDENT BOAT BUILDERS
INCORPORATED,** an Illinois Corporation,
**STEVE HEESE,** individually,

      Defendants.

Civil Action No.:

Hon.:
Magistrate:

_____

## PLAINTIFF'S COMPLAINT

NOW COMES Plaintiff, Webasto Thermo & Comfort North America, Inc., by and through its Attorneys, HAMMOUD, DAKHLALLAH & ASSOCIATES, PLLC, and for its Complaint, alleges the following against Defendants:

### INTRODUCTORY STATEMENT

1. This is a civil action seeking relief under the provisions of the Sherman Antitrust Act ("SAA") 15 USCA § 1 *et seq.* and various related causes of action derived from Defendants' engagement in an unreasonable restraint of trade.

1

2. Plaintiff brings this action to recover the damages suffered as a result of Defendants' improper conduct.

## JURISDICTION

3. This Court has jurisdiction over Plaintiff's claim for violations of the Sherman Antitrust Act 15 USCA § 1 *et seq.,* under 28 U.S.C. § 1331, 28 U.S.C. § 1337.

4. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorney fees.

5. This Court has personal jurisdiction over Defendants under Mich. Comp. Laws § 600.705(2).  (See *Gen Motors Corp v Ignacio Lopez de Arriortua*, 948 F Supp 656, 663 (ED Mich 1996), if the nonresident conducted business, committed a tort, or furthered a tortious scheme in the forum, personal jurisdiction is appropriate).

6. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(a) and 1391(b), because Plaintiff resides in this District, suffered the damages at issue in this District and Defendants' actions caused consequences to occur in this District, giving rise to Plaintiff's claims in this District.

## PARTIES

7. Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

8. Plaintiff Webasto Thermo & Comfort North American, Inc., is incorporated in and does business in this judicial district in the State of Michigan.

9. Defendant Independent Boat Builders Incorporated is incorporated in the State of Illinois.

10. Defendant Chris Craft Corporation is a company incorporated under the laws of the State of Florida.

11. Defendant Stephen Heese is an individual that resides in the City of Tampa State of Florida.

## FACTUAL ALLEGATIONS

12. Plaintiffs hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

13. Defendant Chris Craft Corporation ("Chris Craft") is a boat manufacturer.

14. In 2012, Defendant Chris Craft contacted Plaintiff Webasto Thermo & Comfort North America, Inc., ("Webasto"), inquiring about using the Webasto Series 60 Marine Sunroof and glass panel for their 36 foot Corsair model.

15. Webasto provided all necessary engineering documentation to Chris Craft for it to produce a mold that had the correct mounting surface to receive Webasto's Series 60 Marine Sunroof.

16. Webasto then validated the initial installation as to be consistent to the engineering specifications required by Webasto.

17. Chris Craft then began production of its 36 foot Corsair model and Webasto delivered Sunroofs as needed.

18. In 2015, Chris Craft contacted Webasto stating it had Sunroof related issues.

19. Webasto then inspected the issue and discovered that its Webasto Series 60 Sunroof that was designed to fit Chris Craft's 36 foot Corsair model was being used by Chris Craft on their new 36 foot Launch model.

20. Chris Craft, without Webasto's knowledge or validation, developed a new hard top roof mold to install Webasto's Series 60 Sunroof on its newer 36 Launch model.

21. Webasto's Series 60 Sunroof was not designed for Chris Crafts 36 Launch model, resulting in a defect in workmanship by Chris Craft.

22. In 2018, non-party Ahab Garas, who owed a Chris Craft 36 Launch, was involved in an incident where the Sunroof shattered, resulting in non-life-threatening injuries to the passengers.

23. The root cause of the Sunroof's failure was Chris Craft's improper use of Webasto's Series 60 Sunroof on its 37 Launch model.

24. In a gesture of goodwill towards Chris Craft, a significant customer of Webasto, Webasto offered to contribute $25,000.00 towards Chris Craft's settlement with Mr. Garas, in exchange for indemnity from the Garas family, and a separate indemnification from Chris Craft for any further Webasto liability.

25. Webasto received an executed indemnification from the Garas family, but did not receive an indemnification from Chris Craft.

26. As a result, Webasto did not pay the $25,000.00 towards the settlement.

27. Chris Craft's president and Chief Executive Officer, Defendant Steve Heese, became upset with Webasto for not paying the $25,000.00 despite knowing Chris Craft did not fulfill its part of the agreement to indemnify Webasto.

28. On December 7, 2018, Defendant Heese, wrote Webasto employees an E-mail stating,

> "It would have cost Webasto twice that amount just to prepare the first answer to his lawsuit. Do you really want to screw me over this? Before you answer, pls [sic] think hard about this, and you may want to google my name. I am currently chairman of the NMMA and on the board of our industry's largest buying co-op. Is it worth $25k to create an enemy for life ?"

5

29. When Defendant Heese refers to the "industry's largest buying co-op," he is referring to Defendant Independent Boat Builders Incorporated ("IBBI").

30. According to IBBI's website, it is the largest partnership in the marine industry.

31. IBBI is a purchasing cooperative group comprised of 18 boat manufacturers.

32. IBBI offers 3-5 year agreements to selective manufacturers and suppliers for marine equipment, parts and hardware.

33. Defendant Steve Heese is the President and CEO of Chris Craft Corporation, and also sits on IBBI's board of directors.

34. Chris Craft is one of the 18 owners of IBBI.

35. On November 20, 2019, Plaintiff was solicited to submit a bid to Defendant IBBI to become IBBI's preferred supplier of HVAC, Heater and Sunroofs. Historically, IBBI had only one supplier for the category of marine air condition, but now, according to its President Tom Broy, was seeking two air condition suppliers as preferred by IBBI's owners.

36. On April 3, 2020, Webasto submitted its best and final bid to IBBI. Upon information and belief, Webasto had the best offer of all bidders.

37. On April 7, 2020, Tom Broy spoke with David Wollard, Senior Director of Marine Climate for Webasto. During that conversation, Mr. Broy seemed pleased with Webasto's bid. Then, Mr. Broy asked if Mr. Wollard knew Defendant Steve Heese of Chris Craft, and brought up what Defendant Heese had told him about Webasto's refusal to pay $25,000.00 towards the settlement.

38. On June 25, 2020, Mr. Broy on behalf of IBBI advised Webasto that it rejected its bid.

39. Tom Broy gave two reasons for rejecting Webasto's bid, 1) availability of part/kit and 2) overall system price.

40. Mr. Wollard presented Mr. Broy with the facts that there were no issues with the availability of parts/kits and that Webasto was more competitively priced with individual A/C systems than anyone else. Mr. Brody agreed, and said IBBI was confused. When asked why Webasto was not provided an opportunity to address confusion, Mr. Broy said, "it got lost in the shuffle."

41. Mr. Broy also said, that in addition to the 5 year warranty that IBBI was seeking, the members of IBBI did not want to accept Webasto's bid because they believed Webasto did not honor product warranty. The only source of this false information was Heese and Chris Craft.

42. In fact, the winning bidder did not meet IBBI's demand for a 5 year warranty.

43. Simply put, Defendants Heese and Chris Craft made good on their threat by convincing IBBI – through false information – to boycott Webasto as a supplier.

## COUNT I
## VIOLATION OF THE SHERMAN ACT (15 U.S.C. § 1)

44. Plaintiff realleges and reincorporates all previous allegations as though restated herein.

45. Under the Section 1 of the Sherman Act, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C.A. 1.

46. Defendant IBBI, collectively and through its various members, possesses extensive market power and is the Nation's largest buying cooperative in the marine industry.

47. On November 20, 2019, Plaintiff received an invitation from IBBI to bid on becoming IBBI's marine air condition supplier for the next three years.

48. The marine air condition equipment was to be used in the marine products sold by IBBI's owners all across the Country and the internationally.

49. On April 3, 2020, Plaintiff submitted a bid to IBBI to be a supplier of marine air condition products.

50. Defendant Steve Heese is on the board of directors for IBBI.

51. On December 7, 2018, Defendant Heese, on behalf of Defendant Chris Craft, threatened Webasto with, "you may want to google my name. I am currently chairman of the NMMA and on the board of your industry's largest buying co-op. Is it work $25k to create an enemy for life?"

52. Defendants Heese and Chris Craft followed through on this threat, and sometime between December 7, 2019 and June 25, 2020, conspired with IBBI, and some or all of its member companies, to unlawfully boycott and not do business with Plaintiff.

53. Defendants Heese, Chris Craft and IBBI knowingly entered into the conspiracy to unreasonably restrain interstate or foreign commerce.

54. On April 7, 2020, Tom Broy, President of IBBI, admitted that Defendant Heese told him that Webasto reneged on an agreement to settle an outstanding situation.

55. IBBI rejected Plaintiff's bid pursuant to the conspiracy.

56. IBBI's rejection resulted in increased pricing for consumers, because Plaintiff was the best priced bid.

57. Collectively, IBBI and Chris Craft conspired to boycott Plaintiff as a market participant in violation of Section 1 of the Sherman Act.

58. Defendants' conspiracy either substantially affected interstate or foreign commerce or occurred within the flow of interstate or foreign commerce.

59. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered a substantial economic injury, loss of goodwill, harm to its busines reputation, loss of esteem and standing in the business community, and loss of business opportunity.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment against Defendants for compensatory damages in an amount exceeding $75,000.00, mandatory treble damages, plus costs and attorneys' fees and interest so wrongfully incurred in having to bring this lawsuit.

## COUNT II
## TORTIOUS INTERFERENCE WITH
## BUSINESS RELATIONSHIP OR EXPECTENCY

60. Plaintiff realleges and reincorporates all previous allegations as though restated herein.

61. Plaintiff had a business expectancy with Defendant IBBI and for deriving benefits therefrom.

62. Defendants Heese and Chris Craft knew of this expectancy, and of Plaintiff's bid.

63. Defendants Heese and Chris Craft wrongfully diverted and took away Plaintiff's relationship with Defendant IBBI.

64. Defendants Heese and Chris Craft attempted to induce – and did induce – IBBI to terminate its relationship with Plaintiff.

65. Defendants' conduct was knowing, intentional, improper, and malicious.

66. These actions were by no means accidental or negligent – they were calculated and specific acts. These are per se wrongful acts – "an act that is inherently wrongful or one that is never justified under any circumstances." *Patillo v Equitable Life Assurance Soc'y,* 502N.W.2D 696, 700 (Mich. Ct. App. 1993).

67. These acts are *prima facie* evidence of an act that is inherently wrongful.

68. These acts are also done with malic because "it is the intentional doing of a wrongful act without justification or excuse." *Feldman v Green,* 360 N.W.2d 881, 881 (Mich. App. 1984).

69. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered a substantial economic injury, loss of goodwill, harm to its busines reputation, loss of esteem and standing in the business community, and loss of business opportunity.

70. Further, the actions of Defendants are causing lost profit damages, loss of good will, and loss of business reputation to accumulate every day.

11

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment against Defendants in an amount exceeding $75,000.00, plus costs and attorneys' fees and interest so wrongfully incurred in having to bring this lawsuit.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACTS

71. Plaintiff realleges and reincorporates all previous allegations as though restated herein.

72. Plaintiff have a contractual relationship with Defendant IBBI pursuant to its bid to become a preferred supplier.

73. At the time Defendants Heese and Chris Craft engaged in the wrongful actions described above, Defendants knew about the contractual relationship between Plaintiff and IBBI.

74. Defendants Heese and Chris Craft wrongfully solicited, diverted and took away Plaintiff's relationship with IBBI.

75. Defendants Heese and Chris Craft have also attempted to induce – and did induce – IBBI to terminate its relationship with Plaintiff.

76. Defendants' conduct was knowing, intentional, improper, and malicious.

77. These actions were by no means accidental or negligent – they were calculated and specific acts. These are per se wrongful acts – "an act that is inherently wrongful or one that is never justified under any

circumstances." *Patillo v Equitable Life Assurance Soc'y,* 502N.W.2D 696, 700 (Mich. Ct. App. 1993).

78. These acts are *prima facie* evidence of an act that is inherently wrongful.

79. These acts are also done with malic because "it is the intentional doing of a wrongful act without justification or excuse." *Feldman v Green,* 360 N.W.2d 881, 881 (Mich. App. 1984).

80. As a direct and proximate result of Defendants wrongful conduct, Plaintiff has suffered a substantial economic injury, loss of goodwill, harm to its busines reputation, loss of esteem and standing in the business community, and loss of business opportunity.

81. Further, the actions of Defendants are causing lost profit damages, loss of good will, and loss of business reputation to accumulate every day.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment against Defendants in an amount exceeding $75,000.00, plus costs and attorneys' fees and interest so wrongfully incurred in having to bring this lawsuit.

## COUNT IV
## BUSINESS DEFAMATION

82. Plaintiff realleges and reincorporates all previous allegations as though restated herein.

83. A corporation has a cause of action for defamation. *Heritage Optical Center, Inc v Levine,* 137 Mich App 793; 359 NW2d 210 (1984).

13

84. Defendants Heese and Chris Craft made defamatory statements regarding Plaintiff to IBBI, either verbally and/or in writing.

85. Defendant Heese, individually and on behalf of Chris Craft, told employees and shareholders of IBBI that Webasto does not stand behind its product warranty.

86. Defendant Heese, individually and on behalf of Chris Craft, told employees and shareholders of IBBI that Webasto reneged on paying Chris Craft $25,000 as agreed to settle an outstanding situation.

87. Defendants' statements to IBBI and its shareholders were intentional and knowingly false in some material respect, and the statement had a tendency to harm Plaintiff's reputation.

88. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered a substantial economic injury, loss of goodwill, harm to its busines reputation, loss of esteem and standing in the business community, and loss of business opportunity.

89. Further, the actions of Defendants are causing lost profit damages, loss of good will, and loss of business reputation to accumulate every day.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment against Defendants in an amount exceeding $75,000.00, plus costs and attorneys' fees and interest so wrongfully incurred in having to bring this lawsuit.

# COUNT V
## BREACH OF COVENANT OF GOOD FAITH AND FAITH DEALING UNDER THE UNIFORM COMMERCIAL CODE SECTION 1-205

90. Plaintiff realleges and reincorporates all previous allegations as though restated herein.

91. The Uniform Commercial Code states that every contract or duty within the Act imposes an obligation of good faith in its performance or enforcement.

92. Defendant IBBI is a "merchant" as defined under UCC 2-204(1).

93. "Good faith" in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. UCC Section 2-203(1)(b).

94. IBBI's invitation to bid and Plaintiff submission of a bid formed a contract between Plaintiff and Defendant IBBI.

95. Plaintiff did all or substantially all of the significant things required under the bid invitation, including being the most competitively priced bidder.

96. Defendant IBBI breached the covenant of good faith and fair dealings by not acting in good faith and unfairly rejecting Plaintiff's bid.

97. Plaintiff suffered damages as a direct and proximate result of Defendant's conduct.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment against Defendants in an amount exceeding $75,000.00, plus costs and attorneys' fees and interest so wrongfully incurred in having to bring this lawsuit.

**COUNT VI**
**DECLARATORY JUDGMENT**

98. Plaintiff realleges and reincorporates all previous allegations as though restated herein.

99. An actual, present and justiciable controversy has arisen between Plaintiff and Defendant Chris Craft concerning liability resulting from the malfunctioning of Webasto's Series 60 Sunroof that was used by Chris Craft on its 36 foot Launch model.

100. Plaintiff seeks a declaratory judgment based on Defendant Chris Craft's refusal to indemnify Plaintiff for injuries and damages resulting from Defendant Chris Craft's improper use of Webasto Series 60 Sunroof that was used by Chris Craft on its 36 foot Launch model.

101. Pursuant to Fed. R. Civ. P. 57 and 28 U.S. Code § 2201, Plaintiff and Defendants are involved in a controversy that requires the Court to decide the respective rights of the parties.

102. Plaintiff requests that the Court enter an Order declaring that:

   a. Any defect in a Webasto Series 60 Sunroof installed on a Chris Craft Launch model or any model other than the 36 foot Corsair it was

designed for, shall be deemed caused by Chris Craft, and Defendant Chris Craft shall be liable and responsible for any defects, and Plaintiff shall not be liable for any damages resulting therefrom;

b. Plaintiff's bid to IBBI was the best bid IBBI received to supply IBBI with marine air condition;

c. Plaintiff is entitled to treble damages in an amount to be determine; and

d. Plaintiff is entitled to all other remedies this Court deems just and appropriate.

HAMMOUD DAKHLALLAH & ASSOCIATES, PLLC

/s/ Kassem M. Dakhlallah_____
Kassem M. Dakhlallah (P70842)
Attorneys for Plaintiff
6050 Greenfield Rd., Ste., 201
Dearborn, MI 48126
Ph.: (313) 551-3038
Dated: October \_\_, 2020          Email: kd@hdalawgroup.com

**DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, Webasto Thermo & Comfort North America, Inc., by and through its attorneys, Hammoud Dakhlallah & Associates, PLLC and hereby demands a trial by jury in the above referenced matter.

/s/ Kassem M. Dakhlallah_____

17

|  |  |
|---|---|
| Dated: October __, 2020 | Kassem M. Dakhlallah (P70842)<br>Attorneys for Plaintiff<br>6050 Greenfield Rd., Ste., 201<br>Dearborn, MI 48126<br>Ph.: (313) 551-3038<br>Email: kd@hdalawgroup.com |